IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KATONNA MANNS, )
)
    Plaintiff, )
)
v. )  Civil Action No.:
)
FEDEX GROUND PACKAGE SYSTEM, )  5:20-cv-404-OC
INC., )        30 PRL
)
    Defendant. )
_____)

## COMPLAINT

COMES NOW the Plaintiff, KATONNA MANNS, ("PLAINTIFF"), and files this Complaint against Defendant, FEDEX GROUND PACKAGE SYSTEM, INC., ("DEFENDANT") respectfully stating unto the Court the following:

## GENERAL ALLEGATIONS

1. This is a cause of action to recover damages, attorney fees, and other relief from DEFENDANT for violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act and the Florida Civil Rights Act.

2. At all material times, PLAINTIFF was a citizen and resident of Marion County, Florida.

3. At all material times, DEFENDANT was a Delaware corporation that operated a package distribution center in Ocala, Florida, which is where PLAINTIFF worked at all material times.

## BACKGROUND

4. In or around November 2017, DEFENDANT hired PLAINTIFF to work as a package handler.

5. At all relevant times, DEFENDANT acted through its officers, agents, servants and employees.

6. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331.

7. At all relevant times, PLAINTIFF was qualified to work as a package handler for DEFENDANT.

8. PLAINTIFF, who is black, was subjected to discrimination by her white supervisor, named Tina.

9. Tina made racist comments to and about PLAINTIFF, including telling PLAINTIFF that PLAINTIFF "went from picking cotton to picking packages." Tina also gave preferential assignments to white subordinates and cut hours from black employees including PLAINTIFF.

10. Sometime in late 2018 or early 2019, PLAINTIFF, who was pregnant at the time, developed a hernia and requested, through her doctor, to be accommodated with a lifting restriction so that she not be required to lift heavy packages.

11. Instead of immediately honoring PLAINTIFF'S request, DEFENDANT made PLAINTIFF wait one month before agreeing, but even after agreeing to the accommodation, Tina continued to require PLAINTIFF to work unloading and loading and working in quality assurance handling heavy packages contrary to her doctor's request.

12. DEFENDANT allowed its employees who worked at the same facility as PLAINTIFF

to behave overtly in a racist manner. This included shipping packages in bags with the "ok" symbol[1], dressing in makeshift Ku Klux Klan attire and holding marches during work hours in the workplace, and lowering crosses from the floor above PLAINTIFF to her work area to harass and intimidate her.

13. PLAINTIFF made several internal complaints to no avail. When PLAINTIFF complained to Tina's supervisor, Chris, about the KKK activity, he responded by asking her how she would know if it was KKK activity if she was not affiliated with the KKK.

14. DEFENDANT threatened to fire PLAINTIFF several times during the course of her employment. PLAINTIFF gave birth on June 6, 2018 and due to complications including a breached birth, and severe anemia, PLAINTIFF'S doctor requested that PLAINTIFF be given six weeks to recuperate. Instead of accommodating her, DEFENDANT told PLAINTIFF that she was going to be treated as a "no show." In fact, DEFENDANT'S Human Resources department informed PLAINTIFF three days after she gave birth that she had to return to work or DEFENDANT would fill her position. Eventually, DEFENDANT allowed PLAINTIFF to take her leave, but she

---

[1] Per the Antidefamation League website: In 2017, the "okay" hand gesture acquired a new and different significance thanks to a hoax by members of the website 4chan to falsely promote the gesture as a hate symbol, claiming that the gesture represented the letters "wp," for "white power." The "okay" gesture hoax was merely the latest in a series of similar 4chan hoaxes using various innocuous symbols; in each case, the hoaxers hoped that the media and liberals would overreact by condemning a common image as white supremacist.

In the case of the "okay" gesture, the hoax was so successful the symbol became a popular trolling tactic on the part of right-leaning individuals, who would often post photos to social media of themselves posing while making the "okay" gesture.

Ironically, some white supremacists themselves soon also participated in such trolling tactics, lending an actual credence to those who labeled the trolling gesture as racist in nature. By 2019, at least some white supremacists seem to have abandoned the ironic or satiric intent behind the original trolling campaign and used the symbol as a sincere expression of white supremacy, such as when Australian white supremacist Brenton Tarrant flashed the symbol during a March 2019 courtroom appearance soon after his arrest for allegedly murdering 50 people in a shooting spree at mosques in Christchurch, New Zealand.

3

was again told by Human Resources that her position would be filled if she failed to return in six weeks.

15. When PLAINTIFF returned to work after her pregnancy, she began developing heart problems but went for medical treatment only when she was not scheduled to work due to fear of retaliation by DEFENDANT.

16. In May 2019, following another complaint about racist activity, DEFENDANT placed PLAINTIFF on leave. When doing so, DEFENDANT told PLAINTIFF that she was being placed on leave for her own protection and DEFENDANT agreed to pay PLAINTIFF during her leave.

17. Instead of allowing PLAINTIFF to return to work, DEFENDANT terminated PLAINTIFF while she was out on leave.

18. As a result of her termination, PLAINTIFF has suffered economic loss in the form of lost wages and fringe benefits, and nonpecuniary loss including embarrassment, loss of enjoyment of life, anxiety and depression.

19. All conditions precedent to this action have occurred or been waived.

## COUNT I
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

20. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

21. DEFENDANT employs and at the time of PLAINTIFF'S termination, employed within a 75 miles radius, 50 or more employees for each working day, during each of 20 or more workweeks in 2018 and the year prior.

22. PLAINTIFF advised DEFENDANT that she suffered from a serious health condition, namely a situation that required treatment for which she was required to be out of work

4

for more than three consecutive days and which required follow-up treatment.

23. DEFENDANT interfered with PLAINTIFF'S request for leave by threatening to fire her.

24. PLAINTIFF had a "serious health condition," namely an injury, impairment or physical or mental condition that involved continuing treatment by a health care provider.

25. PLAINTIFF gave appropriate notice of her need to be absent from work by notifying DEFENDANT as soon as practicable after she learned of the need for leave.

26. DEFENDANT retaliated against or otherwise interfered with the exercise of PLAINTIFF'S right to unpaid leave, *inter alia*, by: 1) terminating her employment; 2) threatening to terminate her employment; and/ 3) failing to provide PLAINTIFF with a written notice detailing the specific expectations and obligations regarding a request for leave.

27. Upon information and belief, DEFENDANT deliberately chose to avoid researching whether its conduct violated the FMLA or affirmatively evaded the law.

28. DEFENDANT'S violation of the FMLA was willful.

29. As the actual, proximate, and legal result of that violation, PLAINTIFF suffered significant economic harm, including lost wages and benefits.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other economic relief, injunctive relief in the form of reinstatement to her former position, liquidated damages, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of the FMLA; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem just and proper.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1981

30. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

31. At all relevant times, PLAINTIFF was a qualified black worker.

32. Upon information and belief, the reason for PLAINTIFF'S termination was her race, or at the very least, PLAINTIFF'S race was a motivating factor in the decision to terminate PLAINTIFF.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other economic relief, punitive damages, injunctive relief in the form of reinstatement to her former position, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of Section 1981; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem just and proper.

## COUNT III
## VIOLATION OF TITLE VII

33. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

34. At all relevant times, PLAINTIFF was a qualified black worker.

35. Upon information and belief, the reason for PLAINTIFF'S termination was her race, or at the very least, PLAINTIFF'S race was a motivating factor in the decision to terminate PLAINTIFF.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other

economic relief, punitive damages, injunctive relief in the form of reinstatement to her former position, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of Title VII; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem just and proper.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT

36. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

37. At all relevant times, PLAINTIFF was a qualified black worker.

38. Upon information and belief, the reason for PLAINTIFF'S termination was her race, or at the very least, PLAINTIFF'S race played a motivating factor in the decision to terminate PLAINTIFF.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other economic relief, punitive damages, injunctive relief in the form of reinstatement to her former position, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of the FCRA; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem just and proper.

## COUNT V
## TITLE VII-RETALIATION

39. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

40. At all relevant times, PLAINTIFF was a qualified black worker who made internal complaints about racist activity in DEFENDANT'S workplace.

7

41. Upon information and belief, DEFENDANT terminated PLAINTIFF so that it could retaliate against her for complaining about racism, or at the very least, PLAINTIFF'S complaints were a motivating factor in the decision to terminate PLAINTIFF.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other economic relief, punitive damages, injunctive relief in the form of reinstatement to her former position, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of Title VII; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem just and proper.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT- RETALIATION

42. The General Allegations and Background above are hereby incorporated by reference as though fully set forth herein.

43. At all relevant times, PLAINTIFF was a qualified black worker who made internal complaints about racist activity in DEFENDANT'S workplace.

44. Upon information and belief, DEFENDANT terminated PLAINTIFF so that it could retaliate against her for complaining about racism, or at the very least, PLAINTIFF'S complaints were a motivating factor in the decision to terminate PLAINTIFF.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANT and respectfully prays the Court that PLAINTIFF will recover nominal damages, unpaid wages, benefits and other economic relief, punitive damages, injunctive relief in the form of reinstatement to her former position, pre- and post-judgment interest, attorney fees and costs of litigation, and other relief by reason of DEFENDANT'S violations of the FCRA; for a trial by jury on all issues so triable; and, for such other and further relief as the Court may deem

just and proper.

Dated: August 27, 2020

Respectfully submitted,

**THE LAW OFFICE OF MATTHEW BIRK**

<u>/s/ Matthew W. Birk</u>
**Matthew W. Birk**
Florida Bar No.: 92265
309 NE 1st Street
Gainesville, FL 32601
(352) 244-2069
(352) 372-3464 FAX
mbirk@gainesvilleemploymentlaw.com
ATTORNEYS FOR PLAINTIFF